IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-226-D

SSG EZRA THOMAS, and )
RACHEL THOMAS, individually and as )
parents and guardians of E.T. and E.T., )
)
                      Plaintiffs, )
)
v. )     **ORDER**
)
BRAGG COMMUNITIES, LLC, et al., )
)
                      Defendants. )

On June 6, 2022, Army Staff Sergeant Ezra Thomas and his wife, Rachel Thomas, individually and on behalf of their two children, E.T. and E.T., (collectively "plaintiffs") filed a complaint in this court alleging breach of warranty of habitability, violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), breach of contract, negligence, violation of Residential Lead-Based Paint Hazard Reduction Act, and temporary recurrent private nuisance against Bragg Communities, LLC, Corvias Management–Army, LLC, Bragg-Picerne Partners, LLC, and Corvias Construction, LLC (collectively "defendants") [D.E. 1].[1] On August 29, 2022, defendants moved to dismiss [D.E. 10] and filed a memorandum in support [D.E. 11]. See Fed. R. Civ. P. 12(b)(6). On September 19, 2022, plaintiffs responded in opposition [D.E. 12]. On October 3, 2022, the defendants replied [D.E. 13]. As explained below, the court grants in part and denies in part defendants' motion to dismiss.

---

[1] On June 21, 2022, plaintiffs voluntarily dismissed certain defendants. See [D.E. 6]. Plaintiffs' complaint also alleged a breach of the Residential Lead-Based Paint Hazard Reduction Act ("RLPHRA") 42 U.S.C. § 4852d, but plaintiffs have withdrawn their RLPHRA claim. See [D.E. 12] 20.

I.

Army Staff Sergeant Ezra Thomas and his family moved into a rental residence on the United States military base at Fort Bragg in January 2013. Compl. [D.E. 1] ¶ 91. Defendants constructed, marketed, and maintained the residence. Id. at ¶¶ 91, 97, 99. "Upon move-in" plaintiffs discovered an infestation of box elder beetles in the residence and backyard. Id. at ¶ 103. Over time, plaintiffs noticed more defects in and around the residence. At some point, plaintiffs learned of lead paint in the residence, defective light switches that "crackled and popped" when plaintiffs attempted to use them, an outlet in the wall that exploded, defective windows that either would not open or would "slam shut like a guillotine," uncleaned HVAC air ducts, and mold feeding into the ventilation ducts, among other defects. Id. at ¶¶ 108–11, 118–19. When plaintiffs attempted to contact defendants to have them remedy these defects, defendants failed to remedy the problems or fixed them much later. Id. at ¶¶ 108–09. As for the mold, defendants did not attempt to properly clean the mold. Instead, defendants simply painted over the wall. Id. at ¶¶ 119–20. Faced with defendants' repeated failure to maintain the rental residence, plaintiffs sought help from politicians and the Fort Bragg Garrison Commander. Id. at ¶ 114. In 2019, plaintiffs moved out of the residence. Id. at ¶ 117. Upon moving out, an inspector came to the residence and noted mold around the air ducts and a lack of insulation in the attic. Id. at ¶¶ 119, 121.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the

2

facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

Defendants argue that the applicable statutes of limitation bars all of plaintiffs' claims. A party may raise an affirmative defense based on the statute of limitations under Federal Rule of Civil Procedure 12(b)(6) rather than Rule 8(c) if all facts necessary to the affirmative defense "clearly appear[ ] on the face of the complaint." Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993); see Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). In other words, the complaint must clearly allege "all facts necessary to the affirmative defense." Goodman, 494 F.3d at 464. When the facts necessary to the affirmative defense are not apparent on

3

the face of the complaint, discovery (not dismissal) is appropriate. See, e.g., Cruz v. Maypa, 773 F.3d 138, 146-47 (4th Cir. 2014).

Initially, plaintiffs respond that the court should toll any applicable statute of limitations pursuant to the June 24, 2020 filing of the class action suit in Page v. Corvias Group, LLC, No. 5:20-CV-336, 2021 WL 4163562 (E.D.N.C. Sept. 21, 2021) (unpublished). In support, plaintiffs cite American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), and its progeny.

Under American Pipe, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Crown. Cork & Seal Co. v. Parker, 462 U.S. 345, 353–54 (1983); see Am. Pipe, 414 U.S. at 554. "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." Crown. Cork, 462 U.S. at 353–54. Although the Supreme Court of North Carolina has not decided the issue, the North Carolina Court of Appeals has adopted the American Pipe standard under North Carolina law. See Scarvey v. First Fed. Sav. & Loan Ass'n of Charlotte, 146 N.C. App. 33, 43, 552 S.E.2d 655, 661 (2001) ("We therefore hold that the statutes of limitations on claims raised in a class action complaint are tolled as to all putative members of the class from the filing of the complaint until a denial of class action certification by the trial court, as per American Pipe[.]"). Thus, sitting in diversity, this court applies the holding of the North Carolina Court of Appeals in Scarvey. See Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013).

Plaintiffs are in the putative class in Page. The plaintiffs in Page are also military personnel and their families who are asserting very similar claims against the defendants in this case regarding their rental housing in Fort Bragg. Compare Page, 2021 WL 4163562, at *1 with Compl. Therefore, under Scarvey and American Pipe, the statute of limitations for plaintiffs is tolled for the period from

4

when the class action in Page was filed, August 31, 2020, to the filing of this lawsuit on June 6, 2022.

In opposition, defendants argue that plaintiff cannot use American Pipe to "revive claims already barred by the applicable limitations period" and that the court should consider all claims time-barred because "all of the housing-related issues identified by Plaintiffs were apparent immediately 'upon move-in.'" [D.E. 11] 8; [D.E. 13] 6–7. Defendants, however, misread plaintiffs' complaint. Plaintiffs' complaint alleges that "[u]pon move-in, Rachel Thomas noted that the home and backyard were infested with box elder beetles. There were dead bugs in the home." Compl. at ¶ 103. The complaint is unclear about when plaintiffs discovered defects in the lighting and windows. Id. at ¶¶ 104–09. The complaint also is unclear about when plaintiffs discovered the clogged HVAC duct. See id. at ¶¶ 110–13. The complaint also alleges that plaintiffs did not discover the mold problems and lack of insulation until early 2019 when an inspector came to the residence. See id. at ¶¶ 116–22. Therefore, because it is not apparent on the face of the complaint that plaintiffs discovered all alleged problems with the rental residence before the expiration of the statute of limitations, as tolled by Page, the court declines to dismiss all claims as time-barred. See, e.g., Cruz, 773 F.3d at 146–47; Goodman, 494 F.3d at 464.

B.

As for plaintiffs' Residential Rental Agreements Act ("RRAA") claim, defendants argue that plaintiffs' claim is time-barred and, alternatively, that "to be actionable, purported violations of the RRAA must have existed during the limitations period." [D.E. 13] 10–11; see N.C. Gen. Stat. § 42-46. Plaintiffs respond that the statute of limitations under the RRAA only limits the recovery period and does not bar plaintiffs' RRAA claim outright. See [D.E. 12] 12–15.

Both parties cite Miller v. C.W. Myers Trading Post, Inc., 85 N.C. App. 362, S.E.2d 189 (1987). In Miller, the North Carolina Court of Appeals analyzed how to apply the RRAA's three-year statute of limitations when "premises were never in a fit and habitable condition from the

5

beginning of their tenancy until the date the Complaint was filed." Id. at 193, 362 S.E.2d at 369. In Miller, the court held that the defendant landlord's conduct was a continuing violation and held that plaintiffs "would be entitled to recover for any period of their occupancy following [three years before filing the suit] during which [plaintiffs] can establish that the condition of the premises was substandard as measured by the statute, regardless of whether the conditions complained of first existed prior to that time." Id., 362 S.E.2d at 369.

Applying Miller, plaintiffs' RRAA claim is not time-barred, but plaintiffs are limited in their recovery to the three-year statute of limitations as tolled by the filing of Page. The complaint plausibly alleges that the residence was still in unacceptable condition within the statute of limitations period. See, e.g., Compl. at ¶ 109 ("Their windows never got fixed until after the February 2019 visit noted below."), ¶ 119 ("After the housing inspector came out, all that Corvias did to remedy the mold problem was to paint it over."), ¶ 121 ("The house inspector who inspected at the time that the family moved out noted that the attic had little to no insulation. For the first time, the family understood the likely reason why it was a constant struggle to keep the house heated and air conditioned properly."). Therefore, although the amount of recovery may be limited, the court declines to dismiss plaintiffs' RRAA claim.

C.

Defendants argue that the four-year statute of limitations bars plaintiffs' UDTPA claim given that the marketing of the rental property to plaintiffs occurred in 2012. See [D.E. 11] 9–10; N.C. Gen. Stat. § 75-16.2; Hinson v. United Fin. Servs., Inc., 123 N.C. App. 469, 473–75, 473 S.E.2d 382, 386–87 (1996). Plaintiffs respond that allegedly poor conditions existed during the limitations period and later unfair or deceptive acts, including defendants allegedly painting over the mold, are sufficient to maintain their UDTPA claim. See, e.g., [D.E. 12] 15–18; Compl. ¶¶ 118–20. Plaintiffs also argue that the statute of limitations only began to run in late 2018 when plaintiffs "discovered the true circumstances of the unlawful conduct." [D.E. 12] 16.

6

To state a claim under the UDTPA, plaintiff must show (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused actual injury to the plaintiff. See, e.g., N.C. Gen. Stat. § 75-1.1; Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007); RD & J Props. v. Lauralea–Dilton Enters., LLC, 165 N.C. App. 737, 748, 600 S.E.2d 492, 500 (2004). The conduct must be immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See, e.g., Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 902 (4th Cir. 1996). Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court. See, e.g., Tucker v. Boulevard at Piper Glen, LLC, 150 N.C. App. 150, 153, 564 S.E.2d 248, 250 (2002); Norman Owen Trucking, Inc. v. Morkoski, 131 N.C. App. 168, 177, 506 S.E.2d 267, 273 (1998).

Plaintiffs have plausibly alleged their UDTPA claim within the applicable four-year statute of limitations. Therefore, the court declines to dismiss plaintiffs' UDTPA claim based on the four-year statute of limitations. See Page, 2021 WL 4163562, at *8.

D.

Defendants argue that the three-year statute of limitations bars plaintiffs' breach of contract claim. See [D.E. 11] 10–11; N.C. Gen. Stat. § 1-52(1); Jackson v. Minn. Life Ins. Co., 275 F. Supp. 3d 712, 728 (E.D.N.C. 2017) (collecting cases). A cause of action for breach of contract accrues when the breach occurs, whether the injured party knows if the breach has occurred or not. See Jackson, 275 F. Supp. 3d at 728; Mtn. Land Props., Inc. v. Lovell, 46 F. Supp. 3d 609, 626 (W.D.N.C. 2014); MacDonald v. Univ. of N.C. at Chapel Hill, 299 N.C. 457, 463, 263 S.E.2d 578, 582 (1980). Plaintiffs respond that a breach of contract claim can be timely if new acts or breaches occur within the limitations period or there are continuing violations. See [D.E. 12] 19–20 (citing Faulkenbury v. Teachers' & State Emps.' Ret. Sys., 108 N.C. App. 357, 368, 424 S.E.2d 420, 425 (1993)).

7

A "cause of action for breach of contract accrues, and the statute of limitations period begins to run, '[a]s soon as the injury becomes apparent to the claimant or should reasonably become apparent[.]'" ABL Plumbing & Heating Corp. v. Bladen Cnty. Bd. of Educ., 175 N.C. App. 164, 168, 623 S.E.2d 57, 59 (2005) (quoting Liptrap v. City of High Point, 128 N.C. App. 353, 355, 496 S.E.2d 817, 819, disc. review denied, 348 N.C. 73, 505 S.E.2d 873 (1998)) (alteration in original). "Further damage incurred after the date of accrual is only an aggravation of the original injury and does not restart the statutory limitations period." ABL Plumbing, 175 N.C. App. at 168, 623 S.E.2d at 819. However, "North Carolina case law is sparse regarding whether the continuing violation doctrine applies to breach of contract claims so as to toll the applicable statute of limitations." Lambert v. First Horizon Bank, No. 3:19-CV-581, 2021 WL 3260073, at *3 (W.D.N.C. June 29, 2021) (unpublished), report and recommendation adopted, No. 3:19-CV-581, 2021 WL 3234624 (W.D.N.C. July 29, 2021) (unpublished).

Sitting in diversity, this court must predict how the Supreme Court of North Carolina would rule on any disputed state law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from the Supreme Court of North Carolina, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotations omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988). Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec.

8

Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

North Carolina appellate courts have applied the continuing wrong doctrine as an "exception to the general rule" that a cause of action accrues as soon as the right to institute and maintain a suit arises. Williams v. Blue Cross Blue Shield of N.C., 357 N.C. 170, 178, 581 S.E.2d 415, 423 (2003). North Carolina appellate courts view continuing violations as falling into two narrow categories: (1) a long-standing policy of discrimination and (2) a continually recurring violation. Faulkenbury, 108 N.C. App. at 368, 424 S.E.2d at 425. Plaintiffs do not argue that the first category applies. As for the second category, North Carolina "courts have used this exception narrowly." Birtha v. Stonemor, N.C., LLC, 220 N.C. App. 286, 292, 727 S.E.2d 1, 7 (2012).

In applying the second category, a court also should consider "[t]he particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged...." Williams, 357 N.C. at 179, 581 S.E.2d at 423; see Stratton v. Royal Bank of Can., 211 N.C. App. 78, 86, 712 S.E.2d 221, 229 (2011). Relying on Williams, North Carolina appellate courts have considered applying the continuing wrong doctrine in cases ranging from breach of fiduciary duty in trust to conversion and corporate rights cases. See, e.g., Babb v. Graham, 190 N.C. App. 463, 481, 660 S.E.2d 626, 637 (2008); Stratton, 211 N.C. App. at 86, 712 S.E.2d at 229. The Supreme Court of North Carolina explained that the continuing wrong doctrine can apply only where there are "continual unlawful acts, not by continual ill effects from an original violation." Williams, 357 N.C. at 179, 581 S.E.2d at 423.

Plaintiffs' breach of contract claim regarding defendants' alleged failure to provide plaintiffs a residence "reasonably safe and habitable for occupancy" is not a continuing wrong. In Stratton, the North Carolina Court of Appeals refused to apply the continuing wrong doctrine to a plaintiff deprived of shareholder rights to stock and cash dividends following allegations that a bank

9

wrongfully converted her stock. See Stratton, 211 N.C. App. at 86, 712 S.E.2d at 229. The Stratton court held that the withholding of shareholder benefits was simply an ill-effect of the initial conversion of plaintiff's stock, which was a "discrete occurrence—not a cumulative one—that should have been discovered through reasonable diligence." Id., 712 S.E.2d at 229. Similarly, in this case, defendants' initial failure to provide plaintiffs a residence "reasonably safe and habitable for occupancy" is not a continuing wrong. Accordingly, the court dismisses any breach of contract claim based on defendants' initial failure to provide plaintiffs a residence reasonably safe and habitable for occupancy.

Plaintiffs also claim breach of contract for defendants' alleged failure to properly maintain the premises during the tenancy. See Compl. ¶ 175. This claim is analogous to the continuing wrong discussed in Babb, 190 N.C. App. at 481, 660 S.E.2d at 637. In Babb, the North Carolina Court of Appeals held that when a trustee "continuously refused to make distributions under the trusts until he was removed," this conduct constituted a continuing wrong and the statute of limitations only began to accrue after defendant was removed as trustee. Id., 660 S.E.2d. at 637. As in Babb, plaintiffs have alleged that defendants were under a continuing contractual obligation to ensure timely maintenance of the residence, and the complaint alleges defendants' consistent failure to do so despite plaintiffs' continued requests. See, e.g., Compl. ¶¶ 84, 108–09, 119. Thus, plaintiffs' breach of contract claim based on defendants' alleged failure to properly maintain the premises during the tenancy survives dismissal.

E.

Defendants argue that the three-year statute of limitations bars plaintiffs' negligence claim. See [D.E. 11] 12. In support, defendants argue that the negligence claim accrued when the "wrong giving rise to the right to bring suit is committed, even if . . . the injuries cannot be discovered until a later date." Id.; N.C. Gen. Stat. §§ 1-52(5), (16).

10

In analyzing plaintiffs' negligence claim, the court again examines the continuing wrong doctrine. In Birtha, the North Carolina Court of Appeals rejected applying the continuing wrong doctrine to a negligence claim where there was no claim of physical harm or property damage. See Birtha, 220 N.C. App. at 727, S.E.2d at 7. In contrast to the negligence claim dismissed in Birtha, plaintiffs allege physical harm in their negligence claim. See Compl. ¶¶ 183–89. Thus, the court declines to dismiss plaintiffs' negligence claim. See Page, 2021 WL 4163562, at *9.

F.

Defendants argue that the three-year statute of limitations bars plaintiffs' private nuisance claim. See [D.E. 11] 14; N.C. Gen. Stat. § 1-52(3). In support, defendants assert that the conditions giving rise to the private nuisance claim existed or were discoverable before the statute of limitations period, and, therefore, the claim is barred. Id. Plaintiffs respond that the statute of limitations functions only to "limit the time window for damages." [D.E. 12] 8.

Courts analyzing private nuisance claims under North Carolina law have noted that "[a]lthough the limitations period does not bar the nuisance claims themselves, it does operate to bar plaintiffs' recovery of damages beyond the three years prior to filing suit." In re NC Swine Farm Nuisance Litig., No. 5:15-CV-00013, 2017 WL 5178038, at *7 (E.D.N.C. Nov. 8, 2017) (unpublished) (emphasis omitted); J & P Dickey Real Est. Fam. Ltd. P'ship v. Northrop Grumman Guidance & Elecs. Co., No. 2:11cv37, 2012 WL 925015, at *7 (W.D.N.C. Mar. 19, 2012) (unpublished); Wilson v. McLeod Oil Co., 327 N.C. 491, 511, 398 S.E.2d 586, 596 (1990). Because plaintiffs have alleged a continuing private nuisance within the statue of limitations period, as tolled by the Page class action, the court declines to dismiss plaintiffs' private nuisance claim.

III.

Defendants argue that plaintiffs have failed to state a claim for temporary private nuisance. Specifically, defendants contend that plaintiffs "improperly attempt to assert this claim against all Defendants, without specifying whether or how any particular Defendant allegedly violated the law."

11

[D.E. 11] 17. Plaintiffs respond that their complaint adequately notifies all defendants what the alleged conduct was and that this court allowed a "materially similar" private nuisance claim to proceed in Page. [D.E. 12] 10.

Although this court did not dismiss the private nuisance claim in Page, the arguments made in Page and in this case are substantively different. In Page, defendants based their motion to dismiss on the flawed premise that the class plaintiffs, as tenants, could not sue because the rental residences were not plaintiffs' property. See Page, 2021 WL 4163562, at *10. In this case, however, defendants argue that Bragg Communities LLC ("Bragg") is the only proper defendant because it is the only defendant with any ownership interest in the housing unit and the private nuisance claim against the other defendants lack specificity. See [D.E. 11] 17–18.

The court agrees that the complaint only puts defendant Bragg on notice for the private nuisance claim. Notably, the only theory for private nuisance plausibly alleged in the complaint is that defendants "misuse of its ownership interest in the relevant housing unit and the military housing property at Fort Bragg, caused the Plaintiffs to incur a substantial and unreasonable interference with their ability to use and enjoy their leasehold property." Compl. ¶ 198. Only Bragg has an ownership interest. Compare id. at ¶ 8 with id. at ¶¶ 7, 10–12. Although plaintiffs argue that Corvias Management was involved in how the ownership interest was used through its role as property manager, simply citing Corvias Management as the property manager in the complaint at paragraph 9 does not sufficiently link Corvias Management to the ownership interest cited in the complaint at paragraph 198. Beyond Corvias Management, plaintiffs' complaint does not link the other defendants to the ownership interest cited in their private nuisance claim. Therefore, the court dismisses plaintiffs' private nuisance claim against all defendants except for defendant Bragg.

IV.

Defendants contend that plaintiffs improperly pleaded punitive damages as a separate cause of action and that plaintiffs have not plausibly alleged sufficient facts to recover punitive damages.

12

See [D.E. 11] 18–22. Under North Carolina law, punitive damages are not a separate cause of action. See Sasso v. Tesla, Inc., 584 F. Supp. 3d 60, 81 (E.D.N.C. 2022); Sykes v. Health Network Sols., Inc., 372 N.C. 326, 329, 828 S.E.2d 467, 469 (2019); Watson v. Dixon, 352 N.C. 343, 348, 532 S.E.2d 175, 178 (2000); Newton v. Barth, 248 N.C. App. 331, 345, 788 S.E.2d 653, 664 (2016). Nonetheless, if a complaint plausibly alleges the facts in support of an award of punitive damages under North Carolina law, a court should not dismiss a request for punitive damages.

Defendants argue that plaintiffs have not plausibly alleged "with specificity an aggravating factor ... to justify punitive damages." [D.E. 11] 18. Specifically, defendants contend that under North Carolina law plaintiffs have failed to plausibly allege that "officers, directors, or managers of the corporation participated or condoned the conduct constituting the aggravating factor giving rise to punitive damages." Id. at 20; N.C. Gen. Stat. § 1D-15(c). Plaintiffs respond that the complaint sufficiently alleges facts for punitive damages against the corporate defendants and that this court allowed a "materially indistinguishable claim" to proceed in Page. [D.E. 12] 12.

Under North Carolina law, punitive damages are allowable if the plaintiff shows, by clear and convincing evidence, the existence of an aggravating factor to defendant's conduct, such as malice, fraud, or willful and wanton conduct. See N.C. Gen. Stat. § 1D-15; OmniSource Corp. v. Heat Wave Metal Processing, Inc., No. 5:13-CV-772, 2015 WL 3452918, at *13 (E.D.N.C. May 29, 2015) (unpublished); Opsitnick v. Crumpler, No. 5:13-CV-835, 2014 WL 1682013, at *4 (E.D.N.C. Apr. 28, 2014) (unpublished); Catalano v. AARP Org., No. 5:09-CV-455, 2010 WL 3063263, at *2 (E.D.N.C. Aug. 4, 2010) (unpublished); Monk v. Progressive Se. Ins. Co., No. 7:06-CV-15, 2006 WL 8439059, at *2–3 (E.D.N.C. May 23, 2006) (unpublished). Whether the facts alleged in the complaint plausibly suffice to permit punitive damages is a question of law for the court. See Iqbal, 556 U.S. at 667–80; Twombly, 550 U.S. at 554–63. When punitive damages are sought from a corporate defendant, "the officers, directors, or managers of the corporation" must have "participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." Id.

13

§ 1D-15(c); Bell v. Am. Int'l Indus., No. 1:17CV111, 2018 WL 2745238, at *3 (M.D.N.C. June 7, 2018) (unpublished).

Plaintiffs fail to plausibly allege that any of defendants' officers, directors, or managers were involved or condoned any of the aggravating factors alleged in plaintiffs' complaint. For example, plaintiffs allege that "Rachel went to the Corvias housing office and voiced her concerns." Compl. ¶ 104. Plaintiffs, however, do not plausibly allege that this unnamed employee at the housing office is an officer, director, or manager of one of the defendants. Therefore, plaintiffs have not plausibly alleged facts sufficient to recover punitive damages under North Carolina law. Thus, the court dismisses plaintiffs' claim for punitive damages.

V.

In sum, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss [D.E. 10] plaintiffs' complaint.

SO ORDERED. This 17 day of January, 2023.

JAMES C. DEVER III
United States District Judge